IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

STEVEN DIXON PRENTICE,           )
                                 )
          Plaintiff,             )
                                 )
     v.                          )     1:15CV311
                                 )
LISA BLUE BOGGS, et al.,         )
                                 )
          Defendant(s).          )

ORDER, MEMORANDUM OPINION, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Steven Prentice Dixon, submitted a *pro se* complaint under 42 U.S.C. § 1983 and Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). He requests permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a). Plaintiff names Assistant United States Attorney Lisa Blue Boggs and North Carolina State Bureau of Investigation Agent E. Michael Smith, Jr. as Defendants. He claims that they violated his rights in various ways and at various times in relation to his criminal prosecutions in this Court and in state court for offenses involving purchasing and manufacturing child pornography and related offenses.

Because Plaintiff is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity," this Court has an obligation to "review" this Complaint. 28 U.S.C. § 1915A(a). "On review, the court shall . . . dismiss the complaint, or any portion of the complaint, if [it] – (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

As to the first basis for dismissal, the United States Supreme Court has explained that "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "The word 'frivolous' is inherently elastic and not susceptible to categorical definition. . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." Nagy v. Federal Med. Ctr. Butner, 376 F.3d 252, 256-57 (4th Cir. 2004) (some internal quotation marks omitted). As part of this review, the Court may anticipate affirmative defenses that clearly appear on the face of the complaint. Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 954 (4th Cir. 1995) (en banc); Todd v. Baskerville, 712 F.2d 70, 74 (4th Cir. 1983).

Alternatively, a plaintiff "fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915A(b)(1), when the complaint does not "contain sufficient *factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[1]

The final ground for dismissal under 28 U.S.C. § 1915A(b)(2) generally applies to situations in which doctrines established by the United States Constitution or at common law immunize governments and/or government personnel from liability for monetary damages. See, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984) (discussing sovereign immunity of states and state officials under Eleventh Amendment); Pierson v. Ray, 386 U.S. 547 (1967) (describing interrelationship between 42 U.S.C. § 1983 and common-law immunity doctrines, such as judicial, legislative, and prosecutorial immunity). Cf. Allen v. Burke, 690 F.2d 376, 379 (4th Cir. 1982) (noting that, even where "damages are theoretically available under [certain] statutes . . ., in some cases, immunity doctrines and special defenses, available only to public officials, preclude or severely limit the damage remedy").

---

[1] Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 697, respectively)).

For the reasons that follow, the Complaint should be dismissed pursuant to 28 U.S.C. § 1915A(b) because it is frivolous, because it fails to state a claim on which relief may be granted, and because it seeks monetary damages from a defendant with immunity from such relief.

The Court's records and Plaintiff's pleadings reveal the following. An affidavit [1:01M112-1 Doc. #1][2] supporting a search warrant procured in this Court states that beginning in November of 2000, Plaintiff became the target of a joint investigation involving the North Carolina State Bureau of Investigation, the United States Postal Service, and the North Carolina Internet Crimes Against Children Task Force. Plaintiff corresponded by email with, and eventually ordered from, an undercover website selling child pornography videos involving children between the ages of 6 and 12. Plaintiff was observed picking up the package containing the ordered material on December 14, 2000. Investigators attempted to follow him, but lost him in traffic. However, he later emailed the operator of the website to say that he arrived home and viewed the tape, but was unhappy with its quality and length. In a subsequent email, he accurately described the contents of the tape and stated that he had placed it under lock and key. He also placed a second order for similar material. Michael Smith, an SBI agent working on the case,

---

[2] The application and affidavit for that search warrant, the signed warrant, and the returned warrant with an attached inventory of items seized have remained in the Court's possession in paper format since January of 2001, when they were presented, signed, returned, and filed in 1:01M112-1. The records were available to counsel for Plaintiff in the criminal prosecution in this Court. To facilitate access to those documents, the Court will direct the Clerk to make that file available electronically and will further direct the Clerk to send Plaintiff copies of these documents.

prepared that second order and placed it in Plaintiff's post office box for delivery on January 11, 2001. He also obtained a search warrant for Plaintiff's home based on the facts just set out and on his training and experience working on child pornography cases, which showed that persons involved with child pornography tend to keep child pornography in their homes in various formats. That warrant [1:01M112-1, Doc. #2] was signed by a Magistrate Judge with this Court and authorized the search of Plaintiff's residence and a detached garage for child pornography and a wide variety of materials, records, and electronic equipment associated with child pornography. According to Plaintiff, agents arrested him in the post office parking lot when he picked up the second package of child pornography. They then searched his vehicle and house. He claims that they did not provide him with any warrant and that he did not believe they had one at the time. The warrant was returned to the Court on January 23, 2001, as having been executed on January 12, 2001. (See Return [1:01M112-1, Doc. #3].) Attached to the returned warrant was a nine page inventory of items seized from Plaintiff's residence which included computers, cameras, CDs, videotapes, paper records, and related items. One of the videotapes recovered from Plaintiff's home showed him engaging in sexual acts with his girlfriend's daughter, who was about three years old at the time.

Following his arrest and the search of his home, Plaintiff was indicted in this Court in case 1:01CR31-1 on two counts of receiving child pornography videotapes in interstate commerce and one count of using a minor to engage in sexually explicit conduct to produce

videotapes.  He pled guilty to one count of receiving child pornography and the charge of using a minor to produce the videotape and received concurrent sentences of 180 and 210 months.  Despite repeated subsequent attempts by Plaintiff to challenge and invalidate those sentences and convictions, they remain valid and in place.  On the same day this Court entered the Judgment in Plaintiff's federal case, a grand jury in Orange County, North Carolina, indicted Plaintiff on charges of first degree rape, first-degree sexual offense (two counts), and indecent liberties with a minor, all in relation to his videotaped sexual assault of the young girl.  He proceeded to trial, was convicted of all charges on October 28, 2003, and was then sentenced to 384 to 470 months of imprisonment.  Plaintiff pursued an unsuccessful direct appeal, which ended when the North Carolina Supreme Court denied review on October 6, 2005.  State v. Prentice, 170 N.C. App. 593, 613 S.E.2d 498, rev. denied, 360 N.C. 74, 622 S.E.2d 628 (2005).  Those convictions and the sentence also remain valid despite Plaintiff's attempts to challenge them.

In the present case, Plaintiff makes numerous allegations against Defendants and persons working with them in his criminal cases.  He claims that both Defendants committed perjury and misled the Courts in his case and failed to disclose evidence.  He alleges that Defendant Boggs retained Plaintiff's property which was seized in the case, as well as restitution money that he paid and which no victim could claim.  He also alleges that she used illegally obtained evidence in his criminal case in this Court.  As for Defendant Smith, Plaintiff claims that he had no authority to initiate a federal investigation,

6

that he lied to and misled the Magistrate Judge who issued the search warrant in this Court, that he did not perform a proper return of the search warrant, that Agent Smith and other officers committed several forms of misconduct in performing the search of Plaintiff's residence, that Agent Smith or those working with him burglarized Plaintiff's house in the time period after the search in order to obtain more evidence against him, and that officers illegally searched a storage unit used by Plaintiff subsequent to his arrest.

As an initial matter, the Court notes that it appears that Plaintiff is attempting to undermine his criminal convictions or sentences. Specifically, his claims challenging the evidence used against him in the criminal cases and the validity of the search of his home call the evidence against him, and therefore his convictions, into question. Similarly, his claims as to restitution payments attack his sentence. To the extent that Plaintiff is directly challenging his conviction or sentence, or is raising claims that would necessarily call his conviction or sentence into question, Plaintiff may not raise such claims without first showing that such conviction or sentence has been reversed on direct appeal, expunged by Executive Order, declared invalid by a state tribunal, or, finally, called into question by a federal court through the issuance of a writ of habeas corpus. Heck v. Humphrey, 512 U.S. 477 (1994). Under Heck, if a prisoner's successful § 1983 claim "'would necessarily imply the invalidity of his conviction or sentence,'" the claim is not cognizable unless the prisoner "'demonstrate[s] that the conviction or sentence already has been invalidated.'" Young v. Nichols, 413 F.3d 416, 418–19 (4th Cir. 2005) (quoting Heck, 512 U.S. at 487). In this

7

case, the evidence obtained as a result of the search of Plaintiff's residence was used during his state trial and formed the basis for his conviction in that case. See North Carolina v. Prentice, 170 N.C. App. 595 (2005). That conviction has not been overturned. Therefore, to the extent Plaintiff asserts claims challenging the evidence used against him, or the restitution included in his Judgment, those claims are barred by Heck.[3]

In addition, with respect to all of the claims against Defendant Boggs, Plaintiff has named a federal official as a Defendant. Suits against federal officials may not be brought via § 1983. District of Columbia v. Carter, 409 U.S. 418 (1973). Plaintiff, of course, may proceed pursuant to 28 U.S.C. § 1331 by alleging that federal officers violated his constitutional rights. Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). However, such actions are subject to the same immunity principles which govern actions brought pursuant to 42 U.S.C. § 1983. See Carlson v. Green, 446 U.S. 14 (1980); Ehrlich v. Giuliani, 910 F.2d 1220 (4th Cir. 1990); Lyles v. Sparks, 79 F.3d 372, 376 n.4 (4th Cir. 1996) (prosecutor). Plaintiff's Complaint must therefore be

---

[3] The Court notes that a § 1983 suit challenging an allegedly unconstitutional search does not always call into question a conviction or sentence. See, e.g., Covey v. Assessor of Ohio County, 777 F.3d 186, 197 (4th Cir. 2015); Heck, 512 U.S. at 487 n. 7. However, in the present case, the evidence recovered during the search of Plaintiff's residence pursuant to the warrant was the primary evidence used against Plaintiff in his state court trial, and Plainiff contends that the evidence recovered should not have been admitted against him. Indeed, it appears that Plainiff intends to first proceed under § 1983, and then use the determination on that claim as the basis to raise a challenge to his conviction. (See Memorandum [Doc. #4] at 2 ("The intent of Plaintiff is, first, to recover the financial losses and values of property which was caused by the Defendant's criminal acts and malfeasance; and second, once this Court makes a determination that the acts occurred, Plaintiff intends to file a separate action, as related to the criminal matters to remedy the harms on the criminal side (rather than civil), pursuant to such vehicles via habeas corpus.")) Therefore, it appears that this claim is potentially barred by Heck. In addition, to the extent the claim is not barred by Heck, it is time-barred and frivolous, as further discussed below.

8

reviewed to determine if Plaintiff is seeking monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Here, Plaintiff seeks damages from Defendant Boggs for her actions in his federal criminal prosecution. However, prosecutors have absolute immunity for their participation in the judicial process. Imbler v. Pachtman, 424 U.S. 409, 430 (1976). Therefore, Plaintiff's Complaint against Boggs should be dismissed pursuant to 28 U.S.C. § 1915A because Plaintiff seeks monetary relief from a defendant who is immune from such relief.

In addition, as to any remaining claims against Agent Smith, the Court notes that the application of the appropriate statute of limitations is an affirmative defense that the Court may consider in this context. See Eriline Co. S.A. v. Johnson, 440 F.3d 648, 655-56 (4th Cir. 2006) (citing Nasim, 64 F.3d at 955). The statute of limitations in this case is three years. See Wilson v. Garcia, 471 U.S. 261, 276-80 (1985) (holding that, in § 1983 actions, state statute of limitations for personal injury applies); Brooks v. City of Winston Salem, 85 F.3d 178, 181 (4th Cir. 1996) (applying North Carolina's three-year statute of limitations for personal injuries to § 1983 actions); N.C. Gen. Stat § 1-52 (establishing three-year statute of limitations for personal injury). A plaintiff's cause of action accrues, and the statute of limitations runs, from the date on which he "possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim, 64 F.3d at 955.
9

Here, most of Plaintiff's claims are clearly time-barred. Plaintiff was present for his own arrest and the search of his home in 2001. He not only witnessed, but claims to have been the victim of, any misconduct that occurred during that search. Therefore, to the extent he raises claims based on the execution of the search or the conduct of officers during the search, Plaintiff was clearly aware of that alleged harm at the time of the search in 2001. Similarly, Plaintiff was also aware of the alleged burglary of his house and search of his storage unit at that time and was aware of what evidence was used against him in his criminal cases at the time of his federal conviction in August of 2001 and his state conviction in 2003. He was also aware, or at least could have been aware through reasonable inquiry, of Defendant Smith's authority to pursue the investigation and the federal case at the time that case commenced in 2001. Finally, with respect to Plaintiff's allegations regarding restitution, the last action related to his restitution payments occurred when the Court ordered a substitution of the recipient of the restitution payments in 2009. United States v. Prentice, No. 1:01CR31-1, Order [Doc. #52] (M.D.N.C. Oct. 22, 2009) (unpublished). Therefore, Plaintiff was aware of any claims related to his restitution payments by at least that time, or more than five years before he filed the present suit. All of these types of claims are time-barred on the face of the pleadings and this Court's records and can be dismissed for that reason.[4]

---

[4] The Court notes that Plaintiff initially asserted similar claims in a suit filed on November 17, 2014, that was dismissed without prejudice (Case No. 1:14CV1049). The claims noted above are all time-barred even if the Court gives Plaintiff the benefit of the November 17, 2014 filing date.

Plaintiff contends that his claims are timely because he did not discover the alleged problems with the federal search warrant until he received a copy of it in 2011. However, this argument would relate, at most, to Plaintiff's contentions regarding Defendant Smith's procurement and return of the federal search warrant. As discussed above, these claims are potentially barred by Heck. Moreover, the record in Plaintiff's state court case reveals that Plaintiff knew or should have known of the existence and execution of the warrant at least by the time of a pretrial hearing before his state trial in 2003. Prentice v. North Carolina Attorney General, No. 1:14CV559, State's Brief in Support of Motion To Dismiss, Ex. 15 [Doc. #19-20 at 4-5] (M.D.N.C.) (prosecutor stating that Plaintiff's home was searched pursuant to a search warrant obtained during a federal law enforcement operation). In addition, in a brief supporting a Motion to Vacate, Set Aside or Correct Sentence filed in this Court on September 18, 2003, Plaintiff clearly references the existence of the search warrant and the fact that Defendant Smith needed to sign it, and Plaintiff describes it there as an anticipatory warrant. United States v. Prentice, No. 1:01CR31-1, § 2255 Motion [Doc. #30], Brief at 3, 9-10 (M.D.N.C.). Thus, the records in this Court demonstrate that Plaintiff knew of the warrant in 2003, and his claims are clearly time-barred.

Finally, the Court notes that Plaintiff's claims related to the warrant are without merit in any event. Plaintiff contends that Defendant Smith procured an anticipatory search warrant based on the planned second delivery of child pornography to Plaintiff. This is

11

simply incorrect. Although the affidavit supporting the warrant application certainly mentions Plaintiff's second order of pornography and the planned delivery, it does not rely on that delivery to trigger the execution of the warrant. Plaintiff's receipt of the first tape and his own statements that he took it home, watched it, and was keeping it under lock and key provided probable cause for the search warrant, even without the second delivery. Plaintiff's characterization of the warrant as an anticipatory search warrant is simply incorrect. Plaintiff also alleges that the warrant did not name the items being sought with sufficient particularity because it does not properly reference an attachment, Attachment B, which includes lists of those items. However, the warrant as issued very clearly references Attachment B on its face as the document containing the items being sought, and Attachment B is included as an attachment to the warrant. Plaintiff next claims that Defendant Smith failed to return an inventory of items seized. However, the warrant was returned with a long inventory of items seized in the search of Plaintiff's residence.

Plaintiff also contends that Smith did not follow North Carolina law in procuring the warrant. However, violations of North Carolina law do not state a claim under § 1983, which covers only violations of federal law. Plaintiff also alleges that Smith was not federally authorized to obtain the warrant, but Plaintiff provides absolutely no factual basis for this allegation. It is not even clear why Plaintiff thinks that Defendant Smith was not

12

authorized to seek the warrant.[5] In any event, Plaintiff makes only a bare allegation without any support or basis for knowledge. All of Plaintiff's claims should be dismissed.

As a result, Plaintiff's request to proceed *in forma pauperis* should not be authorized, with the exception that *in forma pauperis* status shall be granted for the sole purpose of entering this Order and Recommendation.

Plaintiff has submitted the Complaint for filing, however, and, notwithstanding the preceding determination, § 1915(b)(1) requires that he pay the filing fee as provided by that statute.

IT IS THEREFORE ORDERED that the Clerk mail to Plaintiff copies of the Application and Affidavit, issued Warrant, and returned Warrant in case 1:01M112-1.

IT IS FURTHER ORDERED that *in forma pauperis* status be granted for the sole purpose of entering this Order and Recommendation.

IT IS FURTHER ORDERED that Plaintiff's trust officer shall be directed to pay to the Clerk of this Court 20% of all deposits to his account starting with the month of February of 2016, and thereafter each time that the amount in the account exceeds $10.00 until the $400.00 filing fee has been paid.

---

[5] In another filing in his criminal case raising the same allegation, Plaintiff attached a response by the United States Marshals Service to a FOIA request Plaintiff made for records relating to any deputization of Defendant Smith. United States v. Prentice, No. 1:01CR31-1, Motion [Doc. #79], Attach. (M.D.N.C.). Those records reflect that Agent Smith was indeed deputized as a United States Marshal, including for the purpose of seeking and executing warrants for task force operations, at least for the period of time for which records were still maintained. The response further notes that that records for 2000-2002 are not available because records are not kept beyond five years. Thus, Plaintiff's contentions are simply conclusory allegations without any factual basis.

13

IT IS RECOMMENDED that this action be dismissed pursuant to 28 U.S.C. § 1915A for being frivolous or malicious or for failing to state a claim upon which relief may be granted, as well as for seeking monetary relief against a defendant who is immune from such relief.

This, the 27th day of January, 2016.

          /s/ Joi Elizabeth Peake
          United States Magistrate Judge